**STATE of Minnesota, Respondent,**

v.

**William SENSKE, Appellant.**

**No. A03–1677.**

Court of Appeals of Minnesota.

March 1, 2005.

Mike Hatch, Attorney General, St. Paul, MN; and Susan Gaertner, Ramsey County Attorney, Jeanne L. Schleh, Assistant County Attorney, St. Paul, MN, for respondent.

John M. Stuart, State Public Defender, Susan J. Andrews, Assistant State Public Defender, Minneapolis, MN, for appellant.

Considered and decided by
TOUSSAINT, Chief Judge;
KALITOWSKI, Judge; and WRIGHT,
Judge.

## OPINION

TOUSSAINT, Chief Judge.

This appeal is from sentences imposed on two counts of first-degree criminal sexual conduct committed in violation of Minn. Stat. § 609.342, subd. 1(g) (2002). The appeal has been remanded to this court for reconsideration in light of *Blakely v. Washington,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). We affirm in part and reverse in part.

## FACTS

Appellant William Senske was charged with two counts of first-degree criminal sexual conduct, in violation of Minn.Stat. § 609.342, subd. 1(a) (2002) (sexual penetration of a child under the age of 13 by a person more than 36 months older than the child). Senske agreed to plead guilty to an amended complaint alleging two violations of Minn.Stat. § 609.342, subd. 1(g) (2002) (sexual penetration of a child under the age of 16 with whom the actor has a "significant relationship"). There was no agreement as to sentencing, but the amendment of the complaint allowed the court to consider staying the sentence if doing so was in the best interests of the victims or the family and if appellant was amenable to treatment. *See* Minn.Stat. § 609.342, subd. 3 (2002).

At the guilty-plea hearing, Senske admitted that he committed multiple acts of sexual contact and penetration with K.L., his stepdaughter. He also admitted there were multiple incidents of sexual conduct and penetration with J.L., Senske's son. Finally, he admitted blindfolding J.L. during some of the acts.

At sentencing, following the recommendations of the state, the pre-sentence investigator, and a probation officer who had met with Senske for a sex offender assessment, the district court determined that Senske's sentence should not be stayed, finding that he needed the kind of intensive sex offender treatment found only in prison. The court also determined that Senske's offenses warranted an upward durational departure. As aggravating factors, the court cited the psychological injury to the children, vulnerability due to age, Senske's planning and manipulation (which included blindfolding the children, posing them, and requiring them to have sex with each other), his threats to kill them or other family members if they reported the abuse, his abuse of a position of trust, and the multiple incidents of abuse. The court then imposed consecutive sentences of 216 months for each count, representing 50–percent upward durational departures from the presumptive sentences. The court noted that consecutive sentencing was permissive because both sexual offenses were "crimes against persons." *See* Minn. Sent. Guidelines II.F.2.

On appeal, Senske initially argued that some of the aggravating factors cited by the district court were improper because they were elements of the two offenses. This court rejected that argument and affirmed the departures. *State v. Senske*, No. A03–1677, 2004 WL 1445318 (Minn. App. June 29, 2004), *opinion vacated, remanded* (Minn. Aug. 25, 2004). The supreme court subsequently granted Senske's petition for further review, vacated this court's initial opinion, and remanded for reconsideration in light of *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

## ISSUES

1. Do the upward durational departures imposed violate appellant's right to a jury trial under *Blakely?*

2. Does consecutive sentencing, although permissive, violate appellant's right to a jury trial under *Blakely?*

## ANALYSIS

### I.

■ Appellant argues that the 50 percent upward departures imposed on each count, based on judicial findings of aggravating factors, violated his right to a jury trial under *Blakely v. Washington*, —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). In *Blakely*, the Supreme Court, extending the rule of *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147

L.Ed.2d 435 (2000), held that the "statutory maximum" is the greatest sentence a judge can impose "solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." *Blakely*, —— U.S. at ——, 124 S.Ct. at 2537 (emphasis omitted). The defendant, it held, has a Sixth Amendment right to a jury determination of any fact, except the fact of a prior conviction that increases the sentence above this maximum. *Id.* at 2543. The Court, therefore, reversed and remanded the 90–month "exceptional sentence" that had been imposed under Washington's determinate sentencing scheme. *Id.*

The state concedes that *Blakely* has been applied to upward durational departures under the sentencing guidelines. *See State v. Conger,* 687 N.W.2d 639, 644 (Minn.App.2004), *review granted* (Minn. Dec. 22, 2004).[1] The state also concedes that appellant is entitled to the application of *Blakely* in this case. The state argues, however, that appellant is not entitled to relief under *Blakely* because he admitted to sufficient aggravating factors to support the upward departures.

At the guilty-plea hearing, appellant admitted to multiple incidents of abuse against each victim, and he also admitted to multiple forms of penetration, as well as to blindfolding one of the victims. But these admissions were not accompanied by a waiver of the right to a jury determination on these sentencing factors, as required by *State v. Fairbanks,* 688 N.W.2d 333, 336–37 (Minn.App.2004), *review granted* (Minn. Jan. 20, 2005) (stayed pending

decision in *Shattuck* ), and *State v. Hagen,* 690 N.W.2d 155, 159 (Minn.App.2004). There was no agreement as to sentence, and appellant, therefore, was not advised that these factors could be used to support a sentencing departure.

Based on *Shattuck, Conger,* and the inadequacy of appellant's "admissions" under *Fairbanks* and *Hagen,* we conclude that the upward durational departures must be reversed.

## II.

Appellant also argues that the use of consecutive sentencing, based on a judicial finding that consecutive sentences were permissive because the offenses were "crimes against persons," violated his right to a jury trial under *Blakely.*

Under the sentencing guidelines, consecutive sentencing is permissive when the court is sentencing on "[m]ultiple current felony convictions for crimes against persons," or when there is a prior felony sentence for a "crime against a person" that has not been discharged. Minn. Sent. Guidelines II.F.1., 2. Appellant argues that because the determination whether a crime is a "crime against a person" is made by the sentencing judge rather than a jury, consecutive sentencing under this provision violates his right to a jury trial under *Blakely.*

Consecutive sentencing concerns the relationship between two sentences, separately imposed for different offenses. In order for consecutive sentences to be imposed for multiple current convictions,

---

**1.** The supreme court granted review in *Conger,* but stayed additional processing of that matter, pending a final decision in *State v. Shattuck,* No. C6–03–362 (Minn. argued Nov. 30, 2004). By order filed in *Shattuck* on December 16, the supreme court held that the imposition of an upward durational departure based on aggravating factors not considered

by the jury was a violation of the defendant's rights as articulated in *Blakely,* —— U.S. ——, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004). *State v. Shattuck,* 689 N.W.2d 785, 786 (Minn. 2004) (per curiam). The court indicated that a full opinion will follow and directed the parties to submit additional briefs on the appropriate remedy. *Id.*

the law must permit multiple sentences. The double jeopardy clauses of the federal and state constitutions include a protection from multiple punishments for the same offense. *State v. Calmes,* 632 N.W.2d 641, 649 (Minn.2001). In Minnesota, there is also statutory protection against multiple punishment for the same conduct. Minn. Stat. § 609.035, subd. 1 (2004). Unless these legal limits on multiple sentences are satisfied, the issue of consecutive sentencing for current convictions does not arise.

Because multiple sentences were not at issue in *Blakely,* the Court did not discuss consecutive sentencing. *See Blakely,* —— U.S. at ——, 124 S.Ct. at 2535. But, as appellant points out, consecutive sentences are intended to be a more severe sanction than concurrent sentences. *See* Minn. Sent. Guidelines cmt. II.F.01. And here, consecutive sentencing was made permissive based on a judicial finding, rather than a jury finding, that the offenses are "crimes against persons." Minn. Sent. Guidelines II.F.

■ Appellant pleaded guilty to two counts of first-degree criminal sexual conduct committed against different victims. He could be separately sentenced for these offenses only by reason of the law of double jeopardy and Minn.Stat. § 609.035. Although the issue of multiple sentencing is not raised here, and we need not, therefore, decide whether the offenses arose out of a single behavioral incident, we note that in some cases consecutive sentencing for "crimes against persons" would depend on the applicability of the multiple-victim exception to the rule against multiple punishment under Minn.Stat. § 609.035. Here, the jury's verdict, while determining that appellant was guilty of two crimes, did not determine whether those crimes were part of the same behavioral incident, or whether, despite that, multiple sentences could be imposed because there were separate victims. Whether multiple offenses arose from a single behavioral incident depends on the facts and circumstances of the particular case. *State v. Papadakis,* 643 N.W.2d 349, 357 (Minn.App.2002). But the jury is not presented with that issue.

The basic problem with applying *Blakely* to consecutive sentences is, as the state points out, that the two sentences are separate and punishments for different offenses. Courts in other jurisdictions have rejected the argument that the combined duration of consecutive sentences could violate the rule of *Apprendi,* which limits the sentence that can be imposed based on judicial findings. *See State v. Bramlett,* 273 Kan. 67, 41 P.3d 796, 798 (2002) (interpreting *Apprendi* as limiting the court's ability to increase sentence based on its own findings only as to "any individual count"); *People v. Wagener,* 196 Ill.2d 269, 256 Ill.Dec. 550, 752 N.E.2d 430, 442 (2001) ("holding that [b]ecause consecutive sentences remain discrete, a determination that sentences are to be served consecutively cannot run afoul of *Apprendi,* which only addresses sentences for individual crimes.") The Illinois Supreme Court in *Wagener* also noted that *Apprendi* "explicitly disclaimed any holding regarding consecutive sentencing." *Id.* at 441, 120 S.Ct. 2348.

Our supreme court, in applying *Apprendi,* has declined to consider the cumulative duration of two consecutive sentences. *See O'Meara v. State,* 679 N.W.2d 334, 341 (Minn.2004) (reducing consecutive terms to 25 years each under *Apprendi,* although the combined 50–year sentence would have violated the 25–year statutory maximum). Although the application of *Apprendi* to consecutive sentences was apparently not argued in *O'Meara,* it seems the court perceived no problem with allowing the combination of consecutive terms to exceed the statutory maximum. *See id.* (noting

that the statutory maximum was "25 years for each conviction").

The same considerations limiting *Apprendi* to single sentences also apply to *Blakely*. Although *Blakely* does not discuss the possible effect of consecutive sentencing, as *Apprendi* did, its discussion is limited to enhancement of a sentence for a single crime. *See Blakely,* — U.S. at —, 124 S.Ct. at 2535 (discussing enhancement of sentence for burglary based on use of a firearm). The opinion addresses the distinction between elements and sentencing factors. *Id.* at 2539. It does not discuss the possibility that the defendant's conduct may satisfy the elements of more than one crime, except to note that prosecution and conviction for "an entirely separate offense" is preferable to use of the same conduct as a sentencing-enhancement factor. *Id.* at 2539–40. n. 11.

Courts in other jurisdictions have declined to extend *Blakely* to consecutive sentencing based on judicial findings. *See Patrick v. State,* 819 N.E.2d 840, 847 (Ind. App.2004) (citing *Cowens v. State,* 817 N.E.2d 255 (Ind.App.2004); *cf. People v. Murray,* 5 Misc.3d 636, 785 N.Y.S.2d 675, 677 (N.Y.Sup.2004)) (declining to extend *Blakely* to consecutive sentences until an appellate court holds it may be so extended); *People v. Navarro,* 124 Cal.App.4th 1175, 22 Cal.Rptr.3d 198, 202 (2004) (holding jury's verdicts on multiple counts implied crimes committed on different occasions against different victims that could therefore, be sentenced consecutively). Although sentencing considerations may differ in different states, appellant has not cited any decisions extending *Blakely* to either multiple sentencing or to consecutive sentencing.

Consecutive sentencing is admittedly intended to be a more severe sanction than concurrent sentencing. Minn. Sent. Guidelines cmt. II.F.01. And the judicial finding that multiple convictions are for "crimes against persons" authorizes that sanction, which in this case could not otherwise be imposed without departure. But unless there is a basis to also require the jury to determine the permissibility of multiple sentences, we find no grounds on which to apply *Blakely* to permissive consecutive sentencing.

*Blakely,* while presuming a "standard range" sentence (or "presumptive sentence" in Minnesota) that is determined solely by the jury's verdict, nevertheless requires that the jury determine "all facts legally essential to the punishment." — U.S. at —, —, 124 S.Ct. at 2535, 2543. But here, the "punishment" involved two separate sentences, and the jury does not determine all facts essential to the imposition of separate sentences.

Consecutive sentencing has a significant effect on the length of time served in prison. But the effect of consecutive sentencing on the statutory maximums at issue in *Apprendi* was at least as significant as the impact of consecutive sentencing on presumptive sentence durations. The legislature has removed the statutory maximum of 40 years that formerly limited the aggregate duration of consecutive sentences. 1992 Minn. Laws, ch. 571, art. 2, § 8 (amending Minn.Stat. § 609.15, subd. 2 (1990)). Even before that amendment, however, the supreme court had strictly construed the 40-year limit as counting only the time *remaining* on a prior conviction, not the total prison time imposed for that conviction. *State v. Higginbotham,* 348 N.W.2d 327, 330 (Minn.1984). With the removal of the aggregate 40-year limit, consecutive sentencing permits the aggregate sentence to greatly exceed the statutory maximum sentence on any one count, the problem at issue in *Apprendi.*

We conclude that *Blakely* does not apply to permissive consecutive sentencing based

on a finding that the offenses are "crimes against persons." Consecutive sentencing involves separate punishments for discrete crimes. Just as our supreme court, and courts in others states, have not applied *Apprendi* to consecutive sentences imposed for separate offenses, there is no basis to apply *Blakely* to consecutive sentences. A contrary holding would require the jury first to determine whether the imposition of multiple sentences itself was permissible. We conclude that *Blakely* does not require the jury to determine the relationship between multiple sentences any more than it would require a jury determination whether multiple sentences are permissible. Therefore, the district court's decision to make appellant's sentences consecutive is affirmed.

## D E C I S I O N

The upward durational departures on both counts violated appellant's right to a jury trial under *Blakely*. But the district court properly imposed consecutive sentences based on its own findings.

**Affirmed in part and reversed in part.**